UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER TULLEY ARCHITECT, INC., <br><br>  Plaintiff, <br><br> v. <br><br> JEANNIE SHIN, <br><br>  Defendant. | Case No. 21-cv-00619-AGT <br><br> **ORDER ON MOTION TO DISMISS** <br> Re: Dkt. No. 110 |

Before the Court is TEF Architecture and Interior Design, Inc.'s motion to dismiss Jeannie Shin's first amended third-party complaint. After reviewing the legal standard and Shin's allegations, the Court will explain why TEF's motion will be granted in part and denied in part.

## I.  LEGAL STANDARD

On a motion to dismiss, the Court takes the well-pleaded factual allegations in the complaint as true, construes them in the light most favorable to the nonmoving party, and evaluates whether they state a plausible claim for relief. *See Fort v. Washington*, 41 F.4th 1141, 1144 (9th Cir. 2022). Legal conclusions, unlike factual allegations, are "not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court treats written instruments attached to the complaint as "part of the pleading." Fed. R. Civ. P. 10(c).

## II. BACKGROUND

### A. Shin's Allegations

In October 2019, Jeannie Shin hired Jennifer Tulley as an architect to remodel Shin's home. At the time, Tulley was a principal of Jennifer Tulley Architect, Inc. ("JTA"). *See* First Amended Counter and Third-Party Complaint ("FAC") ¶¶ 6–7, 14.

Starting in November 2019, Tulley began sending Shin monthly bills for her services. Combined, the November and December bills totaled $34,781. Of that amount, Tulley billed $30,656 for work performed by an unnamed "Junior Architect." Shin paid the amounts due. *See* FAC ¶¶ 16–17.

In January 2020, Tulley and TEF Architecture and Interior Design, Inc., executed a letter agreement, under which Tulley agreed to become a TEF employee. A copy of this agreement is attached to Shin's operative third-party complaint. *See* FAC, Ex. 3; Dkt. 109 at 21–23. Certain terms of the agreement are relevant to TEF's motion to dismiss, and the Court will highlight those terms here.

- TEF "offer[ed] [Tulley] employment." Dkt. 109 at 22. Tulley agreed to start as an Associate Principal, a non-equity position. If Tulley met her 2020 revenue goals, TEF would promote her to Principal, an equity position. *See id.* ¶ 8(a), (f).
- TEF explained to Tulley that "[r]evenue from JTA projects that we agree you will bring to TEF will be credited towards" your 2020 net revenue goal. *Id.* ¶ 8(e).
- TEF agreed to "interview three of [Tulley's] current staff." *Id.* ¶ 8(c).
- TEF agreed to "pay the remaining four months' rent on [Tulley's] current office lease." *Id.* ¶ 8(d).

In February 2020, Tulley told Shin that JTA was being acquired and that Tulley and her team "would complete Ms. Shin's project while working at the acquiror, *i.e.*, TEF." FAC ¶ 22.

In each of the first three months of 2020, Tulley sent Shin a bill for architectural services. The total amount billed during those three months was $43,950. Of that amount, Tulley billed $38,344 for work performed by an unnamed "Junior Architect." *See* FAC ¶¶ 19, 23, 24.

2

Shin didn't pay Tulley's 2020 bills. Shin disputed Tulley's charges and asked Tulley to provide more detailed invoices. When it became clear that Shin wasn't going to pay her outstanding balance, Tulley offset a portion of Shin's balance with a $5,000 retainer that Shin had provided to Tulley when the project began. *See id.* ¶¶ 20–21, 26–29, 31.

In 2021, JTA sued Shin to recover Tulley's unpaid fees and to enjoin Shin from using Tulley's architectural drawings. During discovery, Shin learned that two "Junior Architects" who worked on her project, and who accounted for over 90% of the hours billed, were not licensed architects. These two individuals worked for JTA until February 2020, after which they transitioned to TEF. *See id.* ¶¶ 34, 36, 40, 41.

### B.  Shin's Claims and Procedural History

After learning that the "Junior Architects" were not in fact architects, Shin filed counterclaims against JTA. Shin also filed third-party claims against Tulley and TEF. Shin's claims are for fraud and unjust enrichment, for violation of California's UCL and CLRA, and for declaratory relief. All claims arise out of Shin's contention that Tulley unlawfully billed her for work that Tulley falsely represented was performed by an architect. *See id.* ¶¶ 43–97.

Tulley and JTA answered Shin's affirmative pleading, but TEF moved to dismiss. The Court granted TEF's motion to dismiss, explaining that "Shin's allegations against TEF [were] too conclusory to support Shin's claims for relief." Dkt. 100. Shin then filed a first amended third-party complaint. *See* Dkt. 109. TEF again moved to dismiss. *See* Dkt. 110.

### III. DISCUSSION

Shin argues that TEF can be held liable for Tulley's misrepresentations about the "Junior Architects." Shin puts forward two theories of liability as to TEF.

Shin's first theory relies on the doctrine of successor liability. *See Cleveland v. Johnson*, 209 Cal. App. 4th 1315, 1326–27 (2012). Shin asserts that TEF can be held responsible for JTA's liabilities, including liabilities resulting from torts that Tulley committed as JTA's principal, because TEF is JTA's successor.

Shin's second theory relies on the doctrine of vicarious liability. *See Mary M. v. City of*

*Los Angeles*, 54 Cal. 3d 202, 208 (1991). Under this theory, Shin seeks to hold TEF liable for the torts that Tulley allegedly committed in 2020 when Tulley was working for TEF.

As explained below, Shin's allegations support the second theory but not the first.

**A.     Successor Liability**

Shin alleges that in early 2020, TEF acquired JTA. *See* FAC ¶ 22 ("Ms. Tulley told Ms. Shin that her architectural firm was being 'acquired' and that she and her team would complete Ms. Shin's project while working at the acquiror, *i.e.*, TEF."). As a result of the acquisition, Shin maintains that TEF can be held liable for JTA's liabilities, including liabilities stemming from any torts that Tulley committed within the scope of her employment at JTA.

When one company purchases another company's assets, the purchasing company, by default, "does not assume the seller's liabilities." *Cleveland*, 209 Cal. App. 4th at 1327 (quoting *Ray v. Alad Corp.*, 19 Cal. 3d 22, 28 (1977)). This general rule can be overcome if either: (1) the purchasing company "express[ly] or implied[ly]" agrees to assume the seller's liabilities; (2) the transaction amounts to "a consolidation or merger of the two corporations;" (3) "the purchasing corporation is a mere continuation of the seller;" or (4) "the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Id.* (quoting *Ray*, 19 Cal. 3d at 28).

Shin invokes the second and third exceptions. She asserts that the transaction between JTA and TEF amounted to "a consolidation or merger." Opp'n, Dkt. 113 at 5. She also asserts that the purchasing corporation, TEF, is a "mere continuation" of the seller, JTA. *Id.* Shin's allegations don't plausibly support either exception.

First, Shin hasn't plausibly alleged that JTA merged or consolidated with TEF. A merger occurs when one corporation "ceases to exist" and is "absor[bed]" into another. 15 Fletcher Cyclopedia of the Law of Corporations § 7041 (2022). A consolidation occurs when two or more corporations combine "by dissolving the existing [corporations] and creating a single new corporation or organization." *Id.* Shin's allegations don't support a merger or consolidation. Shin doesn't allege that JTA ceases to exist, or that JTA and TEF combined "by dissolving"

4

and "creating a single new corporation or organization." *Id.*

Shin points to the letter agreement between Tulley and TEF and suggests that the agreement reflects "a consolidation or merger of JTA and TEF." FAC ¶ 18 (citing Ex. 3). It does not. Under the agreement, TEF hired Tulley as an Associate Principal, agreed to interview some of her staff, and agreed to pay the remaining four months' rent on her office lease. *See* Dkt. 109 at 22–23 ¶ 8(a), (c), (d). These terms didn't effectuate a merger or consolidation. JTA, the entity that allegedly merged or consolidated with TEF, wasn't even a party to the letter agreement.

Second, Shin hasn't plausibly alleged that TEF is a "mere continuation" of JTA. "To establish that an acquiring corporation is a mere continuation of the seller, a plaintiff must demonstrate (1) no adequate consideration was given for the predecessor corporation's assets . . . ; or (2) one or more persons were officers, directors, or stockholders of both corporations." *Hernandez v. Enter. Rent-A-Car Co.*, 37 Cal. App. 5th 187, 196–97 (2019) (simplified). Shin's allegations don't support either prong.

No factual allegations support that TEF offered inadequate consideration for JTA's assets. In arguing otherwise, Shin points to the letter agreement between Tulley and TEF. *See* Supp. Brief, Dkt. 117 at 4 ("The written agreement between Ms. Tulley and TEF satisfies both of the[] [mere continuation] elements."). In that agreement, however, TEF didn't acquire *any* of JTA's assets. Tulley and TEF contemplated therein that TEF would review Tulley's JTA projects and decide whether Tulley could bring any of them with her to TEF. *See* Dkt. 109 at 23 ¶ 8(e) ("TEF has established a net revenue goal . . . for 2020 for you. Revenue from JTA projects that *we agree* you will bring to TEF will be credited towards this goal.") (emphasis added). But no specific JTA projects were transitioned under the agreement, let alone for inadequate consideration.

Shin's allegations also don't plausibly support the other route to a "mere continuation" finding: that "one or more persons were officers, directors, or stockholders of both corporations." *Hernandez*, 37 Cal. App. 5th at 196–97. TEF hired Tulley as an "Associate Principal," a non-equity position. Dkt. 109 at 22 ¶ 8(a). As an Associate Principal, Tulley wasn't an officer,

5

director, or stockholder of TEF.

The default rule is that when one company acquires another company's assets, the purchasing company doesn't acquire the seller's liabilities. *See Cleveland*, 209 Cal. App. 4th at 1326–27. Shin hasn't overcome this default rule here. On the facts she's alleged, she cannot move forward with her claim that TEF is JTA's successor.

**B.     Vicarious Liability**

Alternatively, Shin contends that TEF can be held vicariously liable for the "Junior Architects" misrepresentations that Tulley made when Tulley worked for TEF.

"Under the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee within the scope of employment." *Mary M.*, 54 Cal. 3d at 208. Shin argues that Tulley committed torts within the scope of her employment at TEF, and Shin's allegations plausibly support her argument.

After Tulley started working for TEF, in early 2020, she continued billing Shin for work performed by "Junior Architects," even though the people performing this work weren't architects. *See* FAC ¶¶ 7, 18, 19, 23, 24, 36, 41. Tulley's "Junior Architects" misrepresentations were plausibly fraudulent or deceptive, and Tulley made these misrepresentations "within the scope of [her] employment" at TEF. *Mary M.*, 54 Cal. 3d at 208.

TEF suggests that even after Tulley became an Associate Principal of TEF, Tulley may have performed work for Shin in Tulley's capacity as the owner of JTA. *See* Reply, Dkt. 114 at 4–6. If so, TEF argues that when Tulley made her "Junior Architects" representations in 2020, she didn't do so as an agent of TEF.

"Ordinarily, the determination [of] whether an employee has acted within the scope of employment presents a question of fact." *Mary M.*, 54 Cal. 3d at 213. The Court sees no convincing reason to deviate from this standard here. Shin has done enough to allege that, in 2020, Tulley made one or more misrepresentations as a TEF agent.

Shin has plausibly alleged that TEF may be held vicariously liable for torts that Tulley committed within the scope of her employment at TEF. But this theory covers only a subset of

6

the misrepresentations that Tulley allegedly made. Tulley made some misrepresentations before she started working for TEF. For the avoidance of doubt, the Court notes that TEF cannot be held vicariously liable for torts that Tulley committed before she started working for TEF.

## IV. CONCLUSION

TEF's motion to dismiss is granted in part and denied in part. The motion is granted as to Shin's theory of successor liability but denied as to Shin's theory of vicarious liability. The allegations in Shin's pleading support the latter theory of liability but not the former.

An amendment may not be futile, so the Court will give Shin leave to amend her third-party complaint once more. If Shin chooses to file a second amended third-party complaint, she must do so by May 26, 2023. If Shin chooses not to amend, TEF must answer by June 2, 2023.

**IT IS SO ORDERED.**

Dated: May 11, 2023

Alex G. Tse
United States Magistrate Judge